# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES DISTRICT COURT
BUQUERQUE NEW MEXICO

JAN 29 1999

CLERK'S COPY

DEAN E. IRVIN, et al.,

     Plaintiffs,

vs.                           No. CIV 96-1073M/RLP

THE SANDIA CORPORATION RETIREMENT
INCOME PLAN and SANDIA CORPORATION,

     Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER COMES up for consideration on Defendants' Motion for Summary

Judgment on the claims of Plaintiffs JoAnn Urevitch and Stanley Urevitch, both former

employees of Defendant Sandia Corporation who seek to increase retirement benefits from

Defendant Sandia Corporation Retirement Income Plan. Having fully considered the record,

the briefs and arguments of the parties, and the applicable law, I conclude that Defendants'

motion is well-taken, and should be granted.

"Where the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Electric Industrial Co.,</u>

<u>Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). Construing the facts liberally in favor

of the Plaintiffs, I do not find evidence which might entitle them to judgment, and therefore, I

find summary judgment appropriate. See also: <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).



Plaintiffs bring this action pursuant to the Employee Retirement Security Act of 1974 (ERISA), 29 U.S.C. Sec. 1001 et seq., and state law. Plaintiffs contend, for the purpose of calculating their retirement benefits, that Defendants should add or "bridge" their years of service with a prior employer, Western Electric Company, to their years of employment with Defendant Sandia Corporation. Plaintiffs also claim (1) that termination of Plaintiff JoAnn Urevitch as a participant in The Sandia Corporation Retirement Income Plan was a mistake, and that Defendants' refusal to reinstate her is arbitrary and capricious; (2) that Defendants failure to keep Plaintiffs timely informed of Defendants' bridging policy is a breach of Defendants' fiduciary duty; (3) that had Plaintiffs known of Defendants' bridging policy at its inception, as opposed to years later, they would have been better able to establish their right to be included; (4) that Defendants' exclusion of Plaintiffs from the bridging policy amounts to a prohibited change in eligibility; and (5) that Defendants' refusal to include Plaintiffs' Western Electric employment in calculating Plaintiffs' benefits, while at the same time permitting other employees "bridging" of prior employment, constitutes unlawful discrimination against Plaintiffs in interpretoin and application of the plan benefits and eligibility.

### TERMINATION OF PLAINTIFF JO ANN UREVITCH AS A PLAN PARTICIPANT

Plaintiff Jo Ann Urevitch is no longer an employee of Defendant Sandia Corporation. She retired in 1971, and because well over two decades have passed since her retirement, it is fair to say (and she presents nothing to the contrary) that she has no prospect of returning to work. Plaintiff is also no longer a participant in Defendant Sandia's retirement plan. After leaving Defendant's employ, Plaintiff accepted a lump sum payment of all her contributions to

the plan, and this payment ended all her rights and participation in Defendant The Sandia Corporation Income Retirement Plan.

Plaintiff states, however, that she did not intend to be terminated from the retirement plan, that she did not request return of her contributions, and did not understand that the lump sum payment would terminate her right to benefits. She maintains that both the lump sum payment and the termination were a mistake and seeks to be reinstated as a plan participant. It does not matter, however, that Plaintiff did not request either the return of her funds or the termination. The salient point at this juncture is that, without protest or inquiry of any kind, Plaintiff accepted both the payment and the termination, and as a reasonable and foreseeable consequence, Plaintiff is not at present a plan participant. This is dispositive of her claims.

It is not reasonable for the Plaintiff to have expected any other result. A letter from Prudential (the funding agent) which accompanied Plaintiff's 1972 payment stated that the monies being paid constituted "full settlement for all amounts due under the Plan." While Plaintiff does not dispute this fact, she maintains she did not understand that receipt of the lump sum payment terminated her from the retirement plan. Referring to the letter as "vague and ambiguous," Plaintiff claims she did not know the payment had "anything to do with the plan." Nevertheless, Plaintiff did nothing for approximately two decades to inquire of either Prudential or Defendants, even though she was receiving no benefits from the plan, and even though, upon his retirement, Plaintiff's husband received no similar lump sum payment.

Plaintiff characterizes the termination as a mistake, but the mistake, if any, appears to have been solely Plaintiff's. In any event, the only material facts are, first, that payment was

3

made, and secondly, that Plaintiff accepted it. The undisputed consequence is Plaintiff's termination as a plan participant; and Plaintiff's status as neither a plan participant nor an employee with a reasonable expectation of returning to work leaves her without standing to pursue an action against Defendants pursuant to ERISA. Raymond v. Mobil Oil Corporation, 983 F.2d 1528 (10th Cir. 1993), *cert. denied* 510 U.S. 822 (1993).

Plaintiff complains that Defendants' refusal to reinstate her as a plan participant is arbitrary and capricious, but she presents no reason, legal or factual, to support reinstatement, other than her personal misunderstanding of the consequences of accepting the lump sum payment. Plaintiff fails to present here any colorable claim to benefits. After decades of silence, she cannot now insist Defendants' made a mistake and demand they make a substantial, but unwarranted, change simply to accomodate a personal misunderstanding Plaintiff never brought to light. Thus, in view of the facts set forth in the administrative record, I cannot find, as Plaintiffs suggests, that the administrator's decision is arbitrary and capricious. Common sense weighs solely in favor of the decision not to reinstate, and therefore, I find Defendants' administrative decision reasonable.

As a matter of law, then, Plaintiff lacks standing to bring the present action. Id.; Firestone Tire & Rubber Company v. Bruch, 489 U.S. 101, 117 (1989). Lack of standing on Plaintiff's federal claims precludes, as well, jurisdiction over her pendent state claims. Alexander v. Anheuser-Busch Companies, Inc., 990 F.2d 536, 538 (10th Cir. 1993). Judgment will be entered for the Defendants on all claims brought by Plaintiff JoAnn Urevitch.

## APPLICATION OF THE BRIDGING POLICY
## TO PLAINTIFF STANLEY UREVITCH

The parties expressly agree that Defendants have "bridged," meaning aggregated for the purpose of calculating an employee's accrued retirement benefits, prior employment with the University of California, Defendant Sandia's predecessor corporation, and in other instances, prior employment with telephone companies later acquired by AT&T, Defendant Sandia's parent corporation, with the time an employee worked for Defendant Sandia. This bridging allows an employee to establish an "uninterrupted service," and generally increases retirement income.

Plaintiff Stanley Urevitch brings the present action because he has been denied the benefits of Defendants' bridging practices. Plaintiff contends that, first, bridging was promised him prior to, and at the inception of, his employment with Sandia, secondly, the obvious benefit of bridging earlier employment with Western Electric Company to the years employed by Defendant Sandia was a principle incentive for his decision to accept work at Sandia, and thirdly, failure to grant him bridging, while allowing it for others, constitutes an inconsistent, discriminatory and unlawful application of the policy.

According to Defendants, and not disputed by Plaintiff, Defendants permitted bridging for employees who had worked for the University of California because, after a transfer of work was directed by the Atomic Energy Commission (AEC), Defendant Sandia wanted to retain employees who had been doing the AEC work and assure them no loss of benefits from the change. Therefore, Defendants treated time employed by the University of California the same as if it were time employed by Defendant Sandia Corporation. Later, Defendants

5

expanded the policy to include persons not only from the University of California, but also from the AEC and AEC-contractors, all as predecessors performing functions taken over by Defendant Sandia Corporation. Expansion of the bridging policy in all of these cases reached persons "actively recruited" by Defendant Sandia.

As examples of inconsistency to contrast with denial of bridging in his own case, and to support his argument that he, too, should be permitted bridging, Plaintiff cites particular instances where this original bridging policy resulted in increased benefits to the employee. Defendants' bridging practices created for those coming from predecessor employers, however, is not comparable or material to Plaintiff's situation. These specific instances where Defendant Sandia provided bridging constitute an insular category specifically justified by, and directed at, employees engaged in an ongoing work, whose employer changed, not by choice of the employee, but by an abrupt shift in function to a newly responsible entity. Plaintiff is not within this category of employees. Thus, neither this bridging policy nor individual precedents within the policy are applicable to Plaintiff's situation. Even if the contrary were true, where Defendants have established an administrative record to justify their decisions in each regard, and each instance rests on its own factual basis, the incidents of bridging Plaintiff recites to support his own right to bridging do not establish, or tend to prove, Plaintiff's case, which is identical to no other.

The service Plaintiff seeks to bridge with his Sandia employment is prior service with an AT&T company. It is undisputed that Defendants' bridging policies eventually came to encompass, in addition to the first category, persons who had worked for AT&T affiliated

companies, and it is not contested that Plaintiff's former employer, Western Electric

Company, was a "Bell System" corporation acquired by AT&T, or in other words, an AT&T

affiliated company. Bridging for employees of AT&T affiliated companies, according to

Defendants, was intended to provide an added incentive for an individual to move from an

AT&T company to Sandia. Accordingly, bridging in this second category is explained and

interpreted by Defendants as requiring that the employee be "actively recruited" by Defendant

Sandia and, additionally, that the employee be working for, or "connected with," an AT&T

company at the time of the recruitment.

> Directive 1.9 must have been formulated to give recruiters
> an additional incentive to motivate employees of AT&T (or
> other AEC contractors) to leave their employer and come
> to Sandia. One such incentive would be an [sic] mechanism
> for ensuring that employees who left their employer did not
> lose their accrued pension benefits. There would be no
> need for such an incentive if the recruited employee had
> already left the AT&T company and had no on-going
> relationship with that company before being recruited by
> Sandia, since he would have made the decision to abandon
> pension benefits before Sandia engaged in active recruitment.
> Defendants' Motion for Summary Judgment on the Claims of
> Plaintiffs Jo Ann and Stanley Urevitch and Memorandum in
> Support Thereof, at p.18.

Plaintiff does not dispute that Defendants have interpreted and applied their bridging

policy so as to require, in order for prior AT&T service to be bridged with Sandia service,

that an employee had been working for an AT&T company *at the time* the employee was

"actively recruited" by Defendant Sandia. Yet, accepting the fact of this interpretation,

Plaintiff disputes its reasonableness. In addition, Plaintiff disputes any justification for

Defendants adopting such a policy, attacks the requirement as an unlawful change in eligibility

for benefits, and contests Defendants' application of the policy as discriminatory, because it has permitted bridging for some employees, but not for Plaintiff.

Plaintiff worked for Western Electric for twenty years and was involuntarily laid off in 1950, two years before his employment with Defendant Sandia. In the interim, he was self-employed. Plaintiff learned of Defendant Sandia Corporation from a friend, a Sandia Corporation employee, who encouraged Plaintiff to apply to Sandia. Plaintiff states he was "recruited" by this friend, who later sought and received authorization from a Sandia vice-president to offer him a position and who also facilitated security clearances and other employment requirements. At the same time, Plaintiff describes this "recruitment" as an unexpected and casual meeting in a Jersey City store. According to the Plaintiff, after he and his friend (who had worked with Urevitch at Western Electric) renewed their acquaintance, the friend encouraged Plaintiff to visit New Mexico and the offices of his employer and to "take any job" offered him by Sandia, because the friend could help in a change of positions afterward. Plaintiff did so, and was were later hired by Defendant Sandia.

These facts and others which detail how Plaintiff came to work for Defendant may or may not be within the meaning of "actively recruited," but I find it unnecessary to decide. Defendants determined by an administrative process that Plaintiff was not actively recruited. This conclusion is fully supported by an administrative record and by facts which Plaintiff, as well as Defendants, recite, and Plaintiff presents no evidence to support the premise that Defendants' interpretation of its bridging policy is an unlawful change in Defendants' position or is inconsistently and unfairly applied. Even though Plaintiff disagrees with the conclusion,

where the administrative determination is not unreasonable, it is not susceptible to modification on review. Dycus v. P.B.G.C., 133 F.3d 1367 (10th Cir. 1998); Millensifer v. Retirement Plan for Salaried Employees of Cotter Corporation, 968 F.2d 1005, 1010 (10th Cir. 1992). Even if what Plaintiff describes constitutes an active recruitment, this, without more, does not bring Plaintiff within Defendants' bridging policy; and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Defendants' bridging requirement which Plaintiff plainly fails to meet is the necessity that an employee be working for an AT&T affiliated company at the time the employee was recruited for work at Sandia. It is undisputed that at the time Plaintiff began his work for Defendant Sandia, he was self-employed and had not been working for an AT&T affiliated company for approximately two years. It makes no difference that Plaintiff was laid off and did not leave Western Electric by his own choice. The material fact remains solely that, at the point Plaintiff went to work for Defendant Sandia, he had not been working for an AT&T affiliated company for two years. There is no evidence in the record, nor does Plaintiff suggest any, to establish any kind of a connection between Plaintiff and Western Electric at the time Plaintiff talked with his friend about applying to Defendant Sandia or at the time Defendant made Plaintiff an offer of work. Contemporaneous to any "active recruitment" by Defendant Sandia, then, if this be the correct view of the facts, Plaintiff was neither employed by nor connected with an AT&T company and he clearly fails the second criterion of Defendants'

bridging policy.

Plaintiff accuses Defendant of changing its position and unreasonably denying him what he now characterizes as a critical inducement for his going to work for Defendant Sandia. The evidence Plaintiff cites clearly demonstrates, however, that in 1952, Plaintiff accepted a position at Sandia without any understanding of its retirement benefit plan, the existence or boundaries of a bridging policy, or even whether Defendant's plan was contributory or non-contributory. By Plaintiff's own statements, at the time he accepted the employment, he did nothing to investigate, to define or to secure a right to bridging. He cannot now establish that a right to bridging or bridging as a policy existed in 1952, much less that the policy Defendants articulated in 1970 constituted a change. Where Defendants justify by a factual record each of the instances where bridging has been allowed an employee other than the Plaintiff, Plaintiff, in contrast, fails to provide any reference for comparison of the supposed former policy with a current one or to suggest any basis for finding changed interpretations (other than Plaintiff's failure to recognize his expectations). Defendants' positions cannot be deemed inherently unreasonable, and Plaintiff fails to demonstrate unreasonableness by any standard. Thus, whether Plaintiff's understandings in 1952 were correct or incorrect, reasonable or unreasonable, no longer makes a difference. Even if Plaintiff accepted a position at Sandia with certain assumptions, he did so without securing definitive information or enforceable assurance. Now his present contentions stand on no more than personal expectations dating from 1952, and Plaintiff admits by his own argument no ground or basis for what it is he seeks in this action.

> While the Urevitches assumed that the rules governing
> pension eligibility at Western Electric would also apply
> at Sandia, they were completely unaware that there was
> no provision in the Sandia pension plan for bridging their
> Western Electric service until the 'active recruitment'
> standard was adoped iñ 1970.. . . Due to the defendants'
> concealment, the Urevitches only became aware of the
> policy in 1996, 26 years after it had been adopted and
> 25 years after they had retired." Plaintiff's Brief in
> Opposition to Motion for Summary Judgment, p.2.

Plaintiff stayed at Sandia twenty years, retired and accepted retirement benefits for

another twenty years. Forty years subsequent to his initial expectation, he invokes what he

characterizes as a primary "inducement" and seeks to enforce what he never before pursued

and what, by Defendants' interpretation of their own policy, never applied to Plaintff. But

contrary to Plaintiff's insistence, the fact that Plaintiff did not secure a right to bridge his

Western Electric service at the time he went to work for Defendant Sandia, and only assumed

it would occur based on informal and incomplete statements at the time, does not equate to

Defendants changing their minds or their policy. Neither does the fact that, after 1970,

Defendants followed specified criteria and included some employees for bridging, but not the

Plaintiff, equate to "concealment" of the practice or render Defendants' distinctions arbitrary

and unreasonable. Where reasonable, Defendants construction of their own plan term requires

on review that I defer to Defendants' interpretation. Dycus v. P.B.G.C., supra at 1370. I

explicitly find reasonableness in Defendants' construction; and I also find, where Plaintiff fails

to establish any anterior right or prior policy, that Defendants have not unlawfully changed

eligibility requirements to Plaintiff's detriment.

Plaintiff argues that Defendants' "active recruitment" bridging criteria for former

11

AT&T affiliated companies should include his situation because, in the event he had returned to work at Western Electric after his lay off, he would have come within Western Electric's requirements for "uninterrupted service." Plaintiff therefore believes that Defendant Sandia should also overlook the two years of self-employment between his service with Western Electric and his hiring by Defendant Sandia. In other words, he believes that Defendants should treat him *as if* he had returned to Western Electric before going to work for Defendant Sandia and *as if* Western Electric's and Defendants' benefits programs were identical. These facts and arguments are not only speculative, they are also immaterial. It is undisputed that Plaintiff did not return to Western Electric and Plaintiff makes no argument that he had planned to do so.

Plaintiff fails to cite a parallel case where an employee self-employed and unconnected to any AT&T affiliate at the time of his recruitment was allowed to bridge prior AT&T service as if there had been no break. While Plaintiff emphasizes the case of Sanders Dolce, an employee from an AT&T affiliate who was permitted bridging, and claims his situation and Dolce's are equivalent, what Plaintiff presents in this respect is no more than his opinion. Defendants by formal administrative process determined that the two situations were neither identical nor parallel and that Sanders Dolce's circumstances contained particular, identified facts which, by Defendants findings and conclusions, justified application of the bridging policy, when Plaintiff's did not. Defendants' findings, in comparison of the two situations, is not unreasonable. Likewise, there exists no evidence in the record that Defendants granted bridging rights to any employee who was not found by Defendants' administrative process to

have been actively recruited. Again, while Plaintiff refers to employees coming from AEC contractor facilities, I find these comparisons irrelevant. Plaintiff was never an employee at one of these Sandia predecessors, and applying different policies for those affected by an AEC transfer of functions and those hired later by Defendant Sandia Corporation is not inherently unreasonable.

All of Plaintiff's case rests essentially on four premises: (1) that Defendants' conclusion Plaintiff was not "actively recruited" is arbitrary and unsupported, (2) that interpretation of its bridging policy so as to require an employee to have been working for an AT&T company at the time he or she was recruited and transferred to Sandia is unreasonable; (3) that Defendants' interpretation of its bridging policy is arbitrary and capricious because it is not consistent with what the Plaintiff understood in 1952, and (4) that Defendants' refusal to grant Plaintiff bridging of Western Electric employment is unlawful because persons other than Plaintiff have been allowed to bridge prior AT&T service. Construing the facts in the light most favorable to Plaintiff, I nevertheless find these propositions groundless. Plaintiff's position compares different factual circumstances which neither by fact or by law tend to establish the Plaintiff's right to a recalculation of accrued benefits. Most importantly, Plaintiff's position attempts to deny Defendants' their right to interpret their own rules. Defendants' reasonable interpretations, however, are clearly protected by case law. Sandoval v. Aetna Life and Casualty Insurance Company, 967 F.2d 377, 381 (10th Cir. 1992); Kaus v. Standard Insurance Company, Court of Appeals for the Tenth Circuit, No. 97-3378 (Decided November 5, 1998).

I find what Plaintiff presents to be essentially argument. Rather than placing facts at issue, Plaintiff simply opposes Defendants' conclusions. Rather than identifying disputed facts, Plaintiff only interprets uncontested facts. At the same time, Plaintiff fails to present solid reason to accept his interpretations over Defendants' and provides no basis for calling Defendants' conclusions unreasonable, except that they have unfavorable consequences to what Plaintiff wants. Other than Plaintiff's expectations in 1952, I find nothing to support Plaintiff's arguments over Defendants' conclusions. The administrative record adequately supports both Defendants' factual findings, looking at the totality of Plaintiff's circumstances, and Defendants' ultimate conclusion that Plaintiff was not "actively recruited." Defendants are legally entitled to construe the terms of their retirement benefit plan, and Defendants' construction of terms with regard to bridging practices, as articulated by both Plaintiff and Defendants, does not demonstrate unreasonableness. Plaintiff's understanding in 1952, of his right to bridge years of service with Western Electric Company, is not material to support present claims pursuant to ERISA, and no evidence in the record establishes an unlawful change in policy or in eligibility for benefits. Because it is Defendants' judgment, then, and not the facts which Plaintiff disputes, neither can I deny summary judgment as to all of these issues.

## CLAIMS OF FRAUD, FAILURE TO INFORM AND
## BREACH OF FIDUCIARY DUTY

Plaintiffs claims grounded ostensibly in fraud, breach of fiduciary duty and failure to inform echo Plaintiffs' claims of wrongful denial of benefits. Plaintiffs present nothing different factually. Again, Plaintiffs do not put material facts at issue. Basing all their claims

on the same undisputed facts and essentially the same arguments, Plaintiffs insist upon their entitlement to information concerning Defendants' bridging policy. Plaintiffs believe that, had they had information regarding Defendants' bridging policy in 1970, they would have been able to establish that they came within the policy and would have been allowed an increase in benefits by reason of bridging. Moving full circle, Plaintiffs argue that the failure of Defendants to provide them information about bridging has resulted in Plaintiffs' inability to establish their right to bridging, which has resulted in Plaintiffs' exclusion from the bridging policy and all information concerning Defendants' practices. In phrasing additional claims, however, in terms of the failure to receive information, Plaintiffs fail to establish a right to the information in the first place.

Plaintiffs rely, for claims of fraud, failure to inform and breach of fiduciary duty, on common law and on ERISA, but Plaintiffs refer only generally to a "common law duty of full disclosure" and to a time when ERISA did not pertain. Factually, Plaintiffs base their assertions, once more, on the supposition that they were entitled to bridging beginning in 1952, and legally, on suggestions of fairness, equity and a "common law" never identified. They appear, as well, to rely on provisions of ERISA which do not apply or do not provide what it is Plaintiffs, hopefully, propose. Plaintiffs allege duty only in very generally terms and cite no cases which establish a duty as they define it. The fact that Defendants did not inform Plaintiffs of the 1970 adoption of an express bridging policy cannot be the basis of an ERISA action where the Plaintiffs fail to establish that Defendants had a duty to disclose internal plan operations to Plaintiffs who did not at any time inquire of the plan, file a claim,

15

or communicate to Defendants their dissatisfaction with benefits.

Plaintiffs thus repeatedly cannot secure their propositions with specific legal support and attempt, instead, to substitute their sense of what would have been right or proper under the circumstances. For example, Plaintiffs cite no law which states that the meeting of Defendants' Employee Benefits Committee in 1975, to review whether Plaintiffs and certain others should be allowed to bridge prior employment with years of service at Sandia, was subject to ERISA requirements, resulted from a request from Plaintiffs, constituted the resolution of a claim, or violated a ERISA provision. At the same time, Plaintiffs contend they should have been fully informed of the deliberations beforehand, should have been present for the discussion, and should have been allowed to present their own evidence on the issues. Unfortunately for the Plaintiffs, this is no more than their personal belief in how Defendants' should have proceeded.

The critical point is that the 1975 consideration of Plaintiffs' right to bridging by Defendants' Employee Benefits Committee was not a part of a claim process initiated by the Plaintiffs and not subject to ERISA mandates. Therefore, what Plaintiffs' argue should have occurred in 1975 is not material. What is material is only what the law required or did not require and whether Defendants complied. Clearly, no law demands the process Plaintiffs desire. Without providing statutory requirement for what Plaintiffs' consider lacking, Plaintiffs complaints amount to little more than not liking how Defendants or Defendants' Employee Benefits Committee chose to conduct its business. Not approving of Defendants' choices does not make Defendants' conduct illegal nor Defendants' conclusions arbitrary and unreasonable,

and because Defendants proceeded within the boundaries of the law and what was reasonable in the circumstances, Plaintiffs have no basis by which to complain. No matter how strenuously Plaintiffs insist that the 1975 determinations were "in secret" and that Plaintiffs should have been informed and allowed to present their case, Plaintiffs cannot leap over the failure to tie requested relief to ERISA requirements.

Further, that it would have made any difference for Plaintiffs to have been present while the 1975 meeting sorted through those employees found to be eligible for bridging and those not, is only speculation. While Plaintiffs state they could have presented facts to establish they were "actively recruited," they say nothing to meet or escape Defendants' criterion that an employee must have been working for an AT&T affliated company *at the time* he or she was actively recruited. Speculation aside, it appears Plaintiffs do not come within Defendants' bridging policy as Defendants have defined it, and nothing Plaintiffs could have presented in 1975, or at any other time, makes a difference. Defendants' definition of its bridging policy is not unreasonable and, by facts upon which both sides agree, Defendants' definition excludes the Plaintiffs.

Nothing in the case Plaintiffs present establishes or may tend to establish that Defendants concealed from Plaintiffs that which they should have disclosed, that Plaintiffs at any time had a right to bridging and were wrongfully denied a benefit to which they were entitled, or that Plaintiffs should prevail, nonetheless, on equitable grounds. No law which can be invoked at this time calls for Defendants to have done more than they did, or to have proceeded by different means. Therefore, Plaintiffs have no claims for fraud, failure to inform

17

or breach of fiduciary duty. The equitable relief Plaintiffs seek is no different from their other requests and arguments, and is but an alternate relief on the same facts and premises. It is also beyond the law. In all respects, ERISA simply does not encompass or accomplish what Plaintiffs want.

## DEFENDANTS' ADMINISTRATIVE DETERMINATIONS

Five plaintiffs originally included in this action were found by Defendants' Employee Benefit Claims Review Committee (EBCRC) in a final administrative decision to have bridging rights and were credited retroactively in the computation of accrued retirement income with prior employment, on the ground that Defendant Sandia Corporation had actively recruited them from a successor corporation, a parent corporation or a related entity. These five have since been dismissed from the case. Only the claims of Plaintiffs JoAnn Urevitch and Stanley Urevitch remain. Based largely on resolution of these other claims and comparison of his situtation with others, Plaintiff Stanley Urevitch believes that Defendants refusal to recognize his twenty years of employment with Western Electric Corporation is arbitrary and capricious and seeks, on that basis, to overturn the EBCRC conclusions.

On review, where a plan administrator operates under a conflict of interest (because of both administering and funding the plan), a higher standard of review than simply "arbitrary and capricious" should be applied. Kaus v. Standard Insurance Company, supra at p. 2. Applying a less deterential standard of review and weighing a conflict of interest as a factor, I nevertheless find Defendant's interpretation of its plan and its bridging policy to be reasonable.

Defendants by their administrative process decided Plaintiff was not actively recruited, did not have specifically needed special skills, and is otherwise outside the bridging policy because he was not working for an AT&T company at the time he accepted work with Defendant Sandia Corporation. Plaintiff strongly and repeatedly asserts the contrary. Further, he argues, requiring an individual be working at an AT&T company at the time of the active recruitment is an arbitrary and unncecessary requirement inconsistent with what Plaintiff was told, or believed, at the time of his hiring. The administrative record, however, supports Defendants' conclusions, and ultimately, exclusion of the Plaintiff from the bridging policy. Even if the totality of the facts may be interpreted to add up to contrary conclusions, a range of reasonable results does not leave Defendants' position factually unsupported. Rather, what Plaintiff cites as critical facts fails both to support his position or to put facts at issue, and Plaintiff's characterizations can be fairly described in current venacular as a "spin." It is not unreasonble for Defendants' to look at the same facts Plaintiff looks at, to view them in a different light, and to add them up to an opposite conclusion.

Defendants' conclusions, and those reached by Defendants' benefits committees, appear sound and logical under the circumstances. Nothing points to an arbitrary or capricious determination. I find no evidence that Defendants have interpreted the plan differently for similarly situated individuals; and although Plaintiffs complain the committee decisions in their regard do not accord with other committee decisions on the same issue, and benefits must be uniform, they point to no other situation in which a non-vested, non-participant in a prior plan or a self-employed individual were allowed increased benefits by reason of the plan's bridging

mechanism. I cannot find the administrative determinations unreasonable by means of any facts, any law or any argument which Plaintiffs present. Therefore, because it is uncontested Plaintiff Stanley Urevitch did not work for Western Electric at the time he or she went to work for Defendant Sandia, and because I find that Defendants have not created this requirement arbitrarily or applied it discriminatorily, I conclude that Defendants' refusal to add Plaintiff's Western Electric employment to the time Plaintiff worked for Defendant Sandia is neither arbitrary nor unreasonable. Further, because the facts on which my conclusions rests are undisputed and immutable, I also conclude that Plaintiffs cannot present a case that would enable them to prevail in this action.

## PLAINTIFFS' STATE LAW CLAIMS

It should have been evident to Plaintiffs, at least by 1975, that neither Plaintiff was receiving credit for service with Western Electric. At a minimum, it should have been a time for inquiry or the filing of a claim for benefits. It seems reasonable that both Plaintiffs would have asserted claims pursuant to New Mexico law in 1952, when it appeared their years with Western Electric were not immediately bridged with their Sandia employment. Or similarly, Plaintiffs could have asserted claims when they retired and did not receive either the benefits they had anticipated or credit for Western Electric employment. It makes eminent sense, then, that one of these dates should trigger the statute of limitations. All of them preclude the present claims.

As Defendants point out, the failure of Plaintiffs to file a formal claim for disputed benefits makes this case unlike the more common denial-of-claim case, where application of

the statute of limitations is clearly marked. At the same time, the present facts are replete with opportunity for a timely claim; and Plaintiffs' silence stands out definitively. Plaintiffs' window for the timely filing of their claims must have opened, at the very latest, with enactment of ERISA in 1975. Thus looking at each of the claims, each now comes too late. By any interpretation of the facts, these claims must be barred.

NOW, THEREFORE, IT IS ORDERED that Defendants' Motion for Summary Judgment is granted.

_____
SENIOR UNITED STATES DISTRICT JUDGE